Angiolillo, J.P
(dissenting). On August 30, 2010, at 3:30 a.m., the defendant signed a consent form in which she agreed to submit to a chemical breath test to determine her blood alcohol content (hereinafter BAG). Her consent was valid under applicable statutory provisions and case law. Every motorist arrested for driving while intoxicated is deemed to consent to a chemical test (see Vehicle and Traffic Law § 1194 [2] [a]; People v Hall, 61 NY2d 834, 835 [1984]), and any motorist may, without an attorney’s assistance, effectively waive the qualified statutory right to refuse the test (see People v Shaw, 72 NY2d 1032, 1033 [1988]). After the defendant gave her valid consent, an attorney entered the case. The majority holds that the chemical breath test results must be suppressed because the police unreasonably failed to advise the defendant of her attorney’s appearance so that she could, among other possibilities, reconsider her previous valid consent with the advice of counsel, retract that consent, and refuse to take the test. I do not agree with my colleagues that, under the circumstances presented here, the defendant’s right to counsel under the New York State Constitution was violated. Therefore, I respectfully dissent.
The evidence at the suppression hearing established that the defendant was the driver of a car which allegedly struck and killed a pedestrian in the early morning hours of August 30, 2010. Nassau County Police Officers Marlon Sanders and Michael Schneider responded to the scene. At 2:40 a.m., after conducting various field sobriety tests, the police officers arrested the defendant for driving while intoxicated and transported her to the Central Testing Section of the Nassau County Police Department (hereinafter NCPD) headquarters. A consent form signed by the defendant established that, at 3:30 a.m., she agreed to submit to a chemical breath test to determine her BAG. The form was initialed by Police Officer Sanders, identified as the arresting officer, and signed by Police Officer Michael Dyckman, identified as the technician for the chemical breath test.
After the defendant had signed the consent form, an attorney employed by her family, Anthony Mayol, called the NCPD and initially spoke with a switchboard operator. A recording of that segment of the call, starting at 3:31 and 53 seconds and ending at 3:32 and 21 seconds, was entered into evidence. During the recorded segment, Mayol identified himself by name, stated that he was calling on behalf of his client who had been ar *18 rested, and asked to speak to the arresting officer or detective; he did not give the name of his client, nor did he request to speak to her. The operator stated that she would transfer his call to “Detention.” The recording ended there. Thus, the recording establishes that Mayol did not inform the police between 3:31:53 and 3:32:21 that the person he represented was the defendant. The time at which Mayol identified the defendant by name is not known, but at the earliest, it would have been sometime after 3:32:21, when the call was transferred to Detention. Telephone records of Mayol’s mobile service provider indicate that Mayol remained on the line with the NCPD until 3:39 a.m., and he called a second time at 4:33 a.m. The parties stipulated that the defendant’s breath was drawn at 3:39 a.m., which was the same minute that Mayol’s first call to the NCPD ended. However, the exact times at which the chemical breath test was commenced and completed are unknown. At the suppression hearing, Mayol testified that, after his first call was transferred by the operator, he told a sergeant that his client had just been arrested, he wished to speak to the arresting officer, and “we’re not consenting to any form of testing whatsoever.” Mayol also testified that, at some point, he asked if he could speak directly to the defendant to “ask how she’s doing and calm her down,” but he could not recall if he made this request during the first or second call. In any event, he was not given the opportunity to speak with the defendant.
At the suppression hearing, the People failed to offer any testimony from the sergeant who had spoken with Mayol, nor did they offer any evidence regarding the feasibility of informing the defendant between 3:32 a.m. and 3:39 a.m. that an attorney had called and was currently speaking with a member of the NCPD. The suppression court generally “credited the testimony of all witnesses . . . [in] all material aspects,” but made no express finding with regard to Mayol’s equivocal testimony regarding his inability to recall if he requested to speak to the defendant during his first or second telephone call. The court granted that branch of the defendant’s omnibus motion which was to suppress her chemical breath test results, finding that there had been “a denial of access to the lawyer.” I would reverse the order and hold that the results of the chemical breath test are admissible.
Section 1194 (2) (a) of the Vehicle and Traffic Law provides that “[a]ny person who operates a motor vehicle in this state shall be deemed to have given consent to a chemical test of one *19 or more of the following: breath, blood, urine, or saliva,” where, as here, a police officer has reasonable grounds to believe that the motorist has violated section 1192 of the Vehicle and Traffic Law. The test must be conducted within two hours after the motorist has been stopped or placed under arrest for such violation (see Vehicle and Traffic Law § 1194 [2] [a]; People v Smith, 18 NY3d 544, 548 n 1 [2012]). The Court of Appeals has recognized that chemical breath tests to determine BAG are an important investigative tool in the effort to combat driving while intoxicated, and the administration of these tests “is a time-sensitive proposition; to maximize the probative value of BAG evidence, the police endeavor to administer chemical tests as close in time as possible to the motor vehicle infraction, typically within two hours of an arrest” (People v Smith, 18 NY3d at 548). The legislature carefully chose the wording of the implied consent provision to ensure timely testing without the need for express consent, even in circumstances where the motorist is unconscious, incapacitated, or injured as a result of excessive drinking (see People v Kates, 53 NY2d 591, 595-596 [1981] [analyzing legislative history]).
Chemical BAG testing does not violate any federal or state constitutional right. Testing of unconscious or incapacitated motorists without their express consent does not violate the constitutional right to equal protection (see id. at 596). Compelling the motorist to undergo such testing does not violate the federal constitutional rights set forth in the Fourth Amendment (unreasonable searches and seizures), Fifth Amendment (privilege against self-incrimination), Sixth Amendment (right to counsel), or Fourteenth Amendment (due process) (see Schmerber v California, 384 US 757 [1966]). The police are not obligated to administer Miranda warnings (see Miranda v Arizona, 384 US 436 [1966]) prior to a chemical BAG test because no testimonial compulsion is involved and the defendant does not have the right to counsel at this stage of the investigation (see People v Craft, 28 NY2d 274, 277-278 [1971]; see also People v Hager, 69 NY2d 141, 142 [1987] [Miranda warnings not required prior to physical performance tests, which do not violate the defendant’s privilege against self-incrimination under either the Federal or State Constitution]). A defendant has no constitutional right to refuse to take a chemical test (see People v Shaw, 72 NY2d at 1033). “[I]nasmuch as a defendant can constitutionally be compelled to take such a test, he has no constitutional right not to take one” (People v Thomas, 46 NY2d *20 100, 106 [1978]). Since, under the statutory scheme, there is no compulsion of any sort to elicit a refusal, the introduction of evidence of a defendant’s refusal to take the test does not violate the Federal or State Constitution (see id. at 107-108, 110). There is no violation of the Sixth Amendment of the Federal Constitution if the police ignore the defendant’s repeated requests to speak to his or her attorney prior to taking the test (see Miller v O’Bryan, 498 F Supp 2d 548, 557 [2007]).
A defendant does, however, have a “qualified” statutory right to decline to voluntarily take a chemical test with the understanding that the refusal will result in the immediate suspension and ultimate revocation of his or her driver’s license for one year and will permit the People to elicit evidence of such refusal at any subsequent criminal trial (People v Smith, 18 NY3d at 548; see Vehicle and Traffic Law § 1194 [2] [b], [d], [f]). Even so, a defendant’s invocation of the qualified statutory right to refuse may be superseded in a case involving death or serious physical injury to a person other than the driver where the police make an ex-parte application and obtain a court order compelling a chemical test (see Vehicle and Traffic Law § 1194 [3]; see also People v Elysee, 49 AD3d 33 [2007]; People v Whelan, 165 AD2d 313 [1991]). It is in connection with a defendant’s qualified statutory right to refuse the test that the courts have considered the issue of access to counsel to aid the defendant in making this decision.
A defendant’s “privilege of access to counsel” in this context was first addressed in People v Gursey (22 NY2d 224, 226 [1968]). In that case, the defendant, having “a particular attorney in mind,” asked to call his attorney twice prior to making his decision whether to submit to a chemical breath test (id. at 227). The Court of Appeals determined that the denial of his requests “violated his privilege of access to counsel” (id. at 228), holding that “law enforcement officials may not, without justification, prevent access between the criminal accused and his lawyer, available in person or by immediate telephone communication, if such access does not interfere unduly with the matter at hand” (id. at 227). The Gursey Court factually distinguished a previous case in which a motorist had asked to consult with his lawyer on the ground that a defendant has “no . . . absolute right to refuse the test until a lawyer reaches the scene” (id. at 229, citing Matter of Finocchairo v Kelly, 11 NY2d 58, 61 [1962]; see Matter of Boyce v Commissioner of N.Y. State Dept. of Motor Vehs., 215 AD2d 476, 477 [1995]).
*21 Subsequently, in People v Shaw, the Court of Appeals held that, because the defendant has no federal constitutional right to counsel during this stage of the investigation, there is no obligation to advise the defendant of a right to counsel:
“The defendant has no constitutional right to refuse to consent to such a search. The right is entirely statutory and, by its terms, may be waived without an attorney’s assistance. The Sixth Amendment does not require that the defendant be afforded counsel at this stage in the proceedings. Although the defendant was called upon to waive a statutory right, it was not a critical stage in the proceedings within the meaning of the Sixth Amendment because no judicial proceedings had been initiated against the defendant at that time. The defendant’s suggestion that he should be afforded the same rights as a person placed in a police lineup is unavailing because the same rule applies to such proceedings; the right to counsel does not attach at a lineup prior to judicial intervention” (People v Shaw, 72 NY2d at 1033 [citations omitted]).
However, the Court noted that, “in this State, a defendant . . . generally has the right to consult with a lawyer before deciding whether to consent to a sobriety test, if he [or she] requests assistance of counsel” (id. at 1033-1034 [emphasis added]). In so holding, the Court apparently recognized that the Gursey rule was premised upon the right to counsel under the New York State Constitution (see NY Const, art I, § 6). The Court distinguished Gursey, holding that “when, as here, an attorney’s assistance has not been requested, the fact that the defendant has made an uncounseled waiver of the statutory right to refuse the test . . . provides no basis for suppressing the results” (People v Shaw, 72 NY2d at 1034).
More recently, in People v Smith, the Court of Appeals characterized the holding in Gursey as providing “a limited right to counsel” which arises “if a defendant arrested for driving while under the influence of alcohol asks to contact an attorney before responding to a request to take a chemical test” (People v Smith, 18 NY3d at 549 [emphasis added]). The Court reiterated: “We have already rejected the notion that the police must notify a defendant concerning the limited right recognized in Gursey” (id. at 551, citing People v Shaw, 72 NY2d 1032 [1988]). “Where there has been a violation of the limited right to counsel recognized in Gursey, any resulting evidence may be *22 suppressed at the subsequent criminal trial” (People v Smith, 18 NY3d at 550).
The limited right to counsel is invoked only upon an express request by the defendant to consult his or her attorney prior to making the decision whether to submit to a chemical BAG test or to exercise the qualified right to refuse (see People v Gursey, 22 NY2d at 228; People v Mora-Hernandez, 77 AD3d 531 [2010] [the defendant made repeated requests for counsel prior to the administration of the test]). A general request for an attorney is not sufficient to invoke the right (see People v Curkendall, 12 AD3d 710, 714-715 [2004] [limited right not invoked when the defendant agreed to submit to the test but made a general request for an attorney upon receiving Miranda warnings]; People v Vinogradov, 294 AD2d 708, 709 [post-Miranda refusal to talk without an attorney does not invoke the limited right to counsel with respect to a breathalyzer test]; People v Hart, 191 AD2d 991 [1993] [the defendant’s statements that he should have counsel did not unequivocally inform the police of his intention to retain counsel or that he wanted to consult with an attorney before undertaking the sobriety tests]).
Here, as the majority acknowledges, there is no evidence that the defendant asked to speak with an attorney at any time. Thus, she did not invoke her limited right to counsel, as defined in Gursey, Shaw, and Smith (see People v Curkendall, 12 AD3d at 714-715; People v Vinogradov, 294 AD2d at 709). Clearly, this situation is governed by the rule set forth in Shaw: “[W]hen, as here, an attorney’s assistance has not been requested, the fact that the defendant has made an uncounseled waiver of the statutory right to refuse the test, provides no basis for suppressing the results” (People v Shaw, 72 NY2d at 1034). Thus, the record establishes that, at 3:30 a.m., the defendant validly waived her qualified statutory right to refuse the test, and her uncounseled waiver provides no basis for suppressing the test results.
More than two minutes after the defendant’s valid waiver of her qualified statutory right to refuse, an attorney informed a member of the police department that he represented the defendant in custody. The relevant question at this point is whether the failure of the NCPD, between 3:32:21 a.m., and the taking of the defendant’s breath sample at 3:39 a.m., to inform the defendant that her attorney had called, requires suppression of the breathalyzer results. I would hold that it does not.
The Court of Appeals has yet to consider a case involving an attorney’s entry at the investigatory stage after the motorist *23 has made a valid waiver of the qualified statutory right to refuse. Other courts which have considered an attorney’s entry into the investigation under various circumstances have found no violation of the right to counsel; however, the defendants in those cases, unlike the one before us, were each informed of their attorney’s phone call, and thus, those courts were not faced with the question before us of whether the police had the obligation to notify the defendant of her attorney’s contact prior to administering the test (cf. People v Pfahler, 179 AD2d 1062 [1992]; People v Meytin, 30 Misc 3d 128[A], 2010 NY Slip Op 52276[U] [2010]).
Nor has the Court of Appeals considered the interplay between the limited right to counsel and statutory authority for law enforcement to obtain a court order superseding the defendant’s qualified right to refuse in a case involving death or serious physical injury. While I would agree with my colleagues in the majority that the nature of the alleged crime committed should not dictate the extent of a defendant’s constitutional rights, this does not answer the question of whether a defendant has a constitutional right to counsel in this context in the first place.
In the absence of case law on point, the majority has taken guidance from decisions outside the area of law governing chemical BAG tests which concern the “indelible right to counsel” under the State Constitution with respect to a suspect’s decision to waive his or her privilege against self-incrimination (People v Grice, 100 NY2d 318, 320 [2003]). In that context, the indelible right to counsel is invoked “before an action is commenced when ... an attorney who is retained to represent the suspect enters the matter under investigation” by notifying the police of the representation (People v Grice, 100 NY2d at 321). As a corollary of this right, the police must “establish and maintain procedures which will insure that an attorney representing [a person in custody] may communicate with him [or her] and with the officials responsible for the investigation, without unreasonable delay” after the attorney has contacted the police (People v Garofolo, 46 NY2d 592, 600 [1979] [internal quotation marks omitted]; see People v Borukhova, 89 AD3d 194, 214-215 [2011]).
In my view, this line of cases has no application to the situation at hand involving a motorist’s waiver of the qualified statutory right to refuse a chemical test. The indelible right to counsel is inconsistent with the statutory procedure allowing *24 law enforcement to overcome a counseled refusal to submit to the test in a case involving death or serious injury where the police obtain a court order. More importantly, not one of the constitutional underpinnings of the “indelible right to counsel” cases is present in any situation in which the Vehicle and Traffic Law authorizes a chemical test.
“The indelible right to counsel arises from the provision of the State Constitution that guarantees due process of law, the right to effective assistance of counsel and the privilege against compulsory self-incrimination. The right is ‘indelible’ because once it ‘attaches,’ interrogation is prohibited unless the right is waived in the presence of counsel” (People v Grice, 100 NY2d at 320-321 [citations omitted; emphasis added]; see NY Const, art I, § 6).
“[A]bsent the advice of an attorney, the average person, unschooled in legal intricacies, might very well unwittingly surrender [his or her privilege against compulsory self incrimination] when confronted with the coercive power of the State and its agents . . . Thus, our indelible right to counsel rule has developed to ensure that an individual’s protection against self incrimination is not rendered illusory during pretrial interrogation” (People v Hawkins, 55 NY2d 474, 485 [1982] [internal quotation marks omitted]).
“The rule that once a lawyer has entered the proceedings in connection with the charges under investigation, a person in custody may validly waive the assistance of counsel only in the presence of a lawyer breathes life into the requirement that a waiver of a constitutional right must be competent, intelligent and voluntary” (People v Hobson, 39 NY2d 479, 484 [1976]; see People v Cunningham, 49 NY2d 203, 208 [1980]).
Here, by contrast, compelling the submission to a chemical BAG test pursuant to Vehicle and Traffic Law § 1194, as opposed to interrogation, does not require the waiver of any constitutional right and implicates only a qualified statutory right to refuse. As noted above, the state and federal constitutional rights to remain silent are not implicated. Moreover, there is no state or federal constitutional right to counsel during the investigatory stage involving the chemical BAG test, except for *25 the limited right to counsel under the State Constitution as defined in Gursey, Shaw, and Smith. The limited right arises only upon a defendant’s express, specific request, and thus, the indelible right to counsel, as defined in the interrogation cases to arise through an attorney’s appearance in the case, cannot apply in this situation. In any event, even if the limited right to counsel is viewed more liberally to include a general right to counsel in making a decision whether to submit to a chemical BAG test, such a right must arise, if at all, prior to the defendant’s decision whether to submit to the test. Thus, the indelible right to counsel would attach, if at all, only when counsel contacts the police prior to the defendant’s waiver of his or her qualified statutory right to refuse. This did not happen here. Notably, the two courts to consider a situation in which an attorney appeared held that the defendants properly waived their limited right to counsel outside the presence of counsel after being informed that the attorney had called (see People v Pfahler, 179 AD2d at 1062; People v Meytin, 30 Misc 3d at 128[A], 2010 NY Slip Op 52276[U] [2010]). These holdings implicitly are at odds with the indelible right to counsel in the interrogation context (see People v Grice, 100 NY2d at 320-321), but consistent with the rule that there is no state or federal constitutional right to counsel during the investigatory stage involving the chemical BAG test, except for the limited right arising upon a defendant’s request (see People v Craft, 28 NY2d 274, 277-278 [1971]). Since there is no fear that the defendant involuntarily waived a constitutional right, the constitutional underpinnings and the purpose of the indelible right to counsel are not present.
Further, even if we were to take guidance from Garofolo and other cases concerning the indelible right to counsel, the result reached by the majority does not necessarily follow. If this were a matter involving a defendant’s uncounseled waiver of his or her privilege against self-incrimination, the remedy for an unreasonable delay in affording access to counsel is the suppression of evidence obtained from the defendant’s uncounseled waiver of the constitutional right to remain silent (see e.g. People v Garofolo, 46 NY2d at 600-601 [the defendant waived his right to remain silent and gave a written statement to the police after entry of counsel in the matter]). Even in such a circumstance, evidence obtained from a defendant pursuant to an intelligent and knowing waiver of a constitutional right prior to counsel’s entry in the investigation is not subject to suppression (see id. *26 at 601-602 [the defendant’s oral statements to police upon his uncounseled waiver of the right to remain silent were admissible, but his written statement taken after counsel’s entry and police denial of access was suppressed]). Applying this holding here by analogy, the chemical breath test results were obtained as a result of the defendant’s valid uncounseled waiver of the statutory right made prior to counsel’s entry into the case, and thus, the test results should not be suppressed.
The majority also draws an analogy to cases involving the state constitutional right of access to counsel during preaccusatory, investigative lineups. In that context, as here, although the accused does not have a state or federal constitutional right to counsel in general (see People v Wilson, 89 NY2d 754, 758 [1997]; People v Hawkins, 55 NY2d at 487), where the police have been notified that an attorney represents the accused, “the police may not proceed with the lineup without at least apprising the defendant’s lawyer of the situation and affording the lawyer a reasonable opportunity to appear” (People v Mitchell, 2 NY3d 272, 274-275 [2004]; see People v Wilson, 89 NY2d at 758-759; People v LaClere, 76 NY2d 670, 672-673 [1990]). The right to counsel attaches in that situation even though defense counsel is effectively limited to “the relatively passive role of an observer” during the lineup (People v Hawkins, 55 NY2d at 485). However, in a lineup, unlike here, the police are not acting under a two-hour statutory constraint. Moreover, a defendant has no right to refuse to participate in a lineup, while the defendant here had the qualified statutory right to refuse the chemical BAG test. Allowing an attorney to enter the case after the defendant effectively waived the qualified statutory right affords the defendant the opportunity to reconsider and revoke that previous valid waiver. In my opinion, the analogy ends there.
In conclusion, the rule stated by the majority, allowing a motorist to withdraw a previous valid waiver, challenges the clear pronouncement by the Court of Appeals that “an uncounseled waiver of the statutory right to refuse the test, provides no basis for suppressing the results” (People v Shaw, 72 NY2d at 1034). It further challenges the holding that the limited right to counsel must be invoked “before responding to a request to take a chemical test” (People v Smith, 18 NY3d at 549 [emphasis added]; see People v Shaw, 72 NY2d at 1034 [“before deciding”]). The rule stated by the majority leads to the inconsistent result that evidence obtained pursuant to a valid, uncounseled waiver of the constitutional right to remain silent is not subject *27 to suppression (see People v Garofolo, 46 NY2d at 601-602), whereas evidence obtained pursuant to a valid waiver of a qualified statutory right is being suppressed. Notably, we generally do not give a defendant a second chance to reconsider a previous valid waiver, even when that waiver involves the most cherished constitutional rights (cf. People v Alexander, 97 NY2d 482, 485 [2002] [a defendant may not withdraw a guilty plea “merely for the asking”]; People v Rossetti, 95 AD3d 1362 [2012] [same]). Under the rule announced today, a defendant is not only given the right to consult with an attorney after making a decision to submit to a chemical BAG test, the defendant is also given the right to reconsider and revoke a previous valid consent. In my view, this goes too far in expanding the previously established limited right to counsel to assist the defendant in determining whether to exercise the qualified statutory right to refuse a chemical test under Vehicle and Traffic Law § 1194.
Accordingly, I would reverse the order of the Supreme Court and deny that branch of the defendant’s omnibus motion which was to suppress the test results.
Dickerson and Miller, JJ., concur with Leventhal, J.; Angiolillo, J.E, dissents in a separate opinion.
Ordered that the order is affirmed.